IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

INSSA MANE,

     Petitioner,

  vs.

THOMAS RICKS,[1] Superintendent,
Upstate Correctional Facility,

     Respondent.

No. 9:08-cv-01250-JKS

MEMORANDUM DECISION

  Petitioner Inssa Mane, a state prisoner appearing *pro se*, has filed a Petition for Habeas

Corpus Relief under 28 U.S.C. § 2254.  Mane is currently in the custody of the New York

Department of Correctional Services, incarcerated at the Upstate Correctional Facility.

Respondent has answered, and Mane has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

  Following a trial by jury, Mane was convicted in the Clinton County Court of two counts

of Burglary in the Second Degree (N.Y. Penal Law, § 140.25(2)), one count each of Sexual

Abuse in the First Degree (N.Y. Penal Law, § 130.65(2)), Attempted Sexual Abuse in the Second

Degree (N.Y. Penal Law § 110/130.65(1)), Unlawful Imprisonment in the Second Degree (N.Y.

Penal Law, § 135.05)), Attempted Coercion in the Second Degree (N.Y. Penal Law,

§ 110/135.65(1)), Forcible Touching (N.Y. Penal Law, § 130.52), and Criminal Trespass in the

Second Degree (N.Y. Penal Law, § 140.15).  The Clinton County Court sentenced Mane to:

---

[1] Thomas Ricks, Superintendent, Upstate Correctional Facility, is substituted for David A. Rock, Superintendent, Great Meadow Correctional Facility.  Fed. R. Civ. P. 25(d).

determinate prison terms of six years each on the burglary convictions and the first-degree sexual

abuse conviction, to be followed by five years' supervised release; determinate terms of one

year's imprisonment on the second-degree unlawful imprisonment conviction, the forcible

touching conviction, and the second-degree criminal trespass conviction; and indeterminate terms

of one to three years' imprisonment on the attempted first-degree sexual abuse conviction and the

attempted first-degree coercion conviction.  All sentences were ordered to be served

concurrently.

 Mane timely appealed his conviction and sentence to the Appellate Division, Third

Department, which affirmed his conviction and sentence, and the New York Court of Appeals

denied leave to appeal on May 30, 2007.[2]  While his appeal was pending, Mane filed a motion to

vacate the judgment under N.Y. Criminal Procedure Law, § 440.10 in the Clinton County Court.[3]

The Clinton County Court denied the motion.  After granting leave to appeal, the Appellate

Division affirmed denial of the § 440.10 motion on March 13, 2008, and the New York Court of

Appeals dismissed his appeal on July 8, 2008.[4]  Mane filed his petition in this Court on

November 18, 2008.

 The Appellate Division briefly summarized the underlying facts as follows:

> Between approximately 3:00 A.M. and 10:30 A.M. on April 4, 2004,
> [Mane] entered four different apartments on Brinkerhoff Street in the City of
> Plattsburgh, Clinton County.  All of the apartments were occupied by female

---

[2] *People v. Mane*, 826 N.Y.S.2d 855 (N.Y.A.D.), *lv. denied*, 869 N.E.2d 666 (N.Y. 2007) (Table) ("*Mane I*").

[3] In his petition before this Court, Mane does not raise any of the issues raised in his § 440.10 motion.

[4] *People v. Mane*, 853 N.Y.S.2d 410 (N.Y.A.D.), *lv. dismissed,* 893 N.E.2d 451 (N.Y. 2008) (Table) ("*Mane II*").

2

college students, several of whom woke to find [Mane] in their bedrooms.  He touched some of them and tried to force one to perform a sexual act, but in each instance the victims were able to make [Mane] leave.  Police apprehended [Mane] at around 10:45 A.M. that same day, and he was identified by two victims who were brought to the location where he was detained.[5]

## II.  ISSUES RAISED/DEFENSES

Mane raises six grounds for relief:  (1) speedy trial violation; (2) failure of the trial court to give an identification instruction; (3) the trial court precluded him from developing a defense; (4) the trial court erred in giving a circumstantial evidence instruction; (5) cumulative error; and (6) the trial court erred in giving circumstantial evidence and expanded intent instructions. Respondent contends that Mane's first, second, fourth, fifth and sixth grounds are unexhausted. Respondent asserts no other affirmative defense.[6]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

---

[5] *Mane I*, 826 N.Y.S.2d at 856.

[6] *See* Rules—Section 2254 Cases, Rule 5(b).

[7] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

of the relevant state-court decision.'[8]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[11]  The Supreme Court has made it clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[12]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[14]  Mane "bears the

---

[8] *Williams*, 529 U.S. at 412.

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[14] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[15]

In applying this standard, this Court reviews the last reasoned decision by the state court.[16]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[17]  Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[18] the Second Circuit has left the question open with respect to AEDPA cases.[19]  In the absence of clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are presumed to be correct.

## IV.  DISCUSSION

**A.  Exhaustion**.

Respondent contends that all of Mane's claims, except his third ground (prevention of presenting a defense), are unexhausted.  Mane does not address the exhaustion issue in his Traverse.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

---

[15] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[16] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[19] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

Ordinarily, under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal, unsupported by an evidentiary basis, the court must accept Respondent's allegations.[20]  Where there is no traverse filed and no evidence offered to contradict the allegations of the return, they must be accepted as true.[21]

This Court may not consider claims that have not been fairly presented to the state courts.[22]  A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the appropriate state courts.[23]  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used.[24] Exhaustion does not require that a petitioner have cited the "book and verse on the federal constitution."[25]  A petitioner who does not cite "book and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[26]

---

[20] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[21] *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

[22] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[23] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[24] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[25] *Picard v. Connor*, 404 U.S. 270, 278 (1971).

[26] *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

This Court's review of the briefs filed on direct appeal and the decision of the Appellate Division clearly indicates that the arguments on the first, second, fourth, fifth, and sixth grounds were presented to and decided by the Appellate Division on direct appeal solely on New York state law, not federal constitutional grounds.  Consequently, Mane's first, second, fourth, fifth, and sixth grounds must be dismissed as unexhausted.[27]

**B.     Merits**.

Ground 3.  Precluded from Presenting a Defense.

Mane argues that the trial court erred in not allowing him to present the testimony of the head of security at State University of New York Plattsburgh.  Specifically, Mane argues that the head of security should have been permitted to testify that there had been a number of break-ins of a nature similar to the ones at issue in this case, a photographic array was shown around campus in which Mane was included, but Mane was not identified as the perpetrator.  In his brief on direct appeal and in his Traverse, Mane argues that the trial court erred in not holding a hearing outside the presence of the jury to allow defense counsel to more fully develop his reasons for offering the testimony.  The Appellate Division rejected Mane's argument, holding:

> Also unpersuasive is [Mane's] claim that County Court should have allowed testimony regarding a February 2004 assault in a state university dormitory in Plattsburgh as evidence of third-party culpability.  Because that testimony would have only shown that the dormitory assault was also committed by a black male and the victim did not identify defendant as her assailant, County Court correctly determined that the minimal probative value of such testimony was "outweighed [by] the countervailing considerations of undue delay and juror confusion" (*People v. Morgan,* 24 A.D.3d 950, 954, 806 N.Y.S.2d 742 [2005], *lv.*

---

[27] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

*denied*, 6 N.Y.3d 815, 812 N.Y.S.2d 455, 845 N.E.2d 1286 [2006]; *see People v. Schulz*, 4 N.Y.3d 521, 528-529, 797 N.Y.S.2d 24, 829 N.E.2d 1192 [2005] ).[28]

The offer of proof and colloquy between Mane's trial counsel and the trial court was as

follows:

> MR. BRUNO:  Yes, your Honor.  The defense moves to be allowed to call a witness that we had not informed the Court of at the commencement of the trial, Ms. Arlene Sable, who is the director of Security at Plattsburgh State and as an offer of proof I would set forth the following:  During the trial information came to the defense's attention in viewing numerous documents provided by the District Attorney and discussions with the defendant that there was an incident that occurred at Plattsburgh State in February of 2004 where a college student, young female was attacked in her dormroom by a black male; that subsequently that individual came forward to Plattsburgh State, reported the crime and viewed a photo array which included Mr. Mane and did not identify him.  That is our offer of proof as to Ms. Sable, your Honor, that it goes to the entire defense case that they have identified the wrong individual.
>
> THE COURT:  Let me see if I understand this.  There was an incident that occurred at the state university in which a black person assaulted or accosted a female in her dormroom?
>
> MR. BRUNO:  Yes, your Honor.
>
> THE COURT:  And someone other than Mr. Mane was identified as being the suspect?
>
> MR. BRUNO:  To my knowledge, nobody was ever identified as the suspect.
>
> THE COURT:  So how does that relate to this?
>
> MR. BRUNO:  It relates to it because we are trying to show to the jury that there may have been another black man committing these types of crimes because two months earlier a black man had attacked a white woman on campus. She saw Mr. Mane's photograph and said it's not him.
>
> THE COURT:         Okay. I understand what the offer is.  Mr. Cantwell?
>
> MR. CANTWELL:     Sir, obviously I would oppose that.  First we've heard of it.  It's clearly irrelevant.  There's been no indication that Mr. Mane had anything to do with that offense and clearly by raising it it would just clearly give the prejudice to the jury that someone thinks he has committed that offense or alternatively that someone else is doing the same thing.  That's an off-campus matter.  It's not on campus.  I don't believe Chief Sable has any knowledge with respect to this case offhand, I think it's clearly irrelevant and immaterial, and potentially prejudicial.

---

[28] *Mane I*, 826 N.Y.S.2d at 856.

MR. BRUNO:  Well, if I may be heard, Judge.  I don't consider it irrelevant.  There's a black man attacking a white woman in February of 2004 at Plattsburgh State.  There's a black man attacking white woman in April of 2004.  They identify Mr. Mane.  A woman in February says it's not him so our defense is they may have picked up the wrong guy in April of 2004.  Goes to the heart of our defense.

THE COURT:  The only thing that that incident has in common with this incident is the fact that a black person allegedly committed an assault in February.  There is nothing else to connect this to that.  I fail to see the relevance of it unless there is some showing that Mr. Mane was in the area, some proof that he was located here in February, and that there is some proof put in that he was in the environs.  I haven't heard anything yet, but whatever the case may be I fail to see that the offer does anything other than to throw a red herring into the proof that is not based on anything that is connected to this case other than race.  That is the only thing I can see that's common in the two stories and that there was somebody in somebody's room.  So I'm not going to allow it.  Unless you make some other connections that I'm not aware of --

MR. BRUNO:  Well, I would just say to the Court as hypothetical.

THE COURT:  I mean, you complained earlier about speculation. You are really, really asking the Jury to speculate now.

MR. BRUNO:  Well, we're not asking the jury to speculate, we're just letting the jury know there was a complaint by a white female that a black man fitting Mr. Mane's description attacked her at Plattsburgh State in February of 2004.  It wasn't Mr. Mane.

THE COURT:  Or the person that was allegedly attacked couldn't identify her attacker.  It could have very well been Mr. Mane, isn't that equally a possibility?

MR. BRUNO:  No.  She was given a photo array and said it was not Mr. Mane and that's what Ms. Sable's testimony will be.

THE COURT:  That's not necessarily so.  I mean, that isn't necessarily a possible explanation for the same thing.  Usually photo arrays do not necessarily indicate that each one is not the person.  Usually it says I can't find the person in the group, not particularizing any familiar photo array, but that may be different in this instance.  Unless there's something more, it doesn't come in.

MR. BRUNO:  No, that's the offer of proof, Judge.

THE COURT:  Anything further?

MR. BRUNO:  So I would take it if I wanted to bring that in through Detective Martin the same decision would be made that he was part of the investigation?

THE COURT:  The mere fact that the defendant is part of a photo array which I find maybe there's something to that, but I don't know, and that there was an assault in the dormitories prior, two months earlier, then this does not in any way connect it to this case other than a similar fact pattern.  So I don't understand how it connects this case.  I mean, there is more than one black person in this

community and if Mr. Mane wasn't selected out of that group, there's several rationales or arguments you've made as to why that didn't happen or where that was.  I mean, are you talking alibi?  Are you talking any of these possibilities?  But I just don't see how this connects it relevant.  Anything else?

        MR. BRUNO:  Note my --

        THE COURT:  You have an exception to every adverse ruling I make.[29]

It is axiomatic that a defendant in a criminal matter has a right to present a defense and, in that regard, call witnesses on his or her behalf.[30]  "Few rights are more fundamental than that of an accused to present witnesses in his own defense."[31]  However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible," and his or her right may yield to rules and procedure of the adversary process that "provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case."[32]  Restrictions, however, "may not be arbitrary or disproportionate to the purposes they are designed to serve."[33]  To establish a Sixth Amendment violation, Mane must demonstrate that he was deprived of the opportunity to present a witness who would have provided testimony that was "both material and favorable to his defense."[34]  Materiality requires that "the omission . . . be evaluated in the context of the entire record."[35]  The Supreme Court has held that evidence establishing third-party culpability is material; therefore, this Court must

---

[29] Docket 11-22, pp. 16-21.

[30] *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

[31] *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers*, 410 U.S. at 302).

[32] *Id*. at 411-12.

[33] *Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987).

[34]  *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982).

[35] *Id.* at 868.

consider whether the state court's decision was "contrary to" or "an unreasonable application of" this clearly established law.[36]

Mane's argument that the trial court should have held a further hearing on the matter is meritless.  Mane's counsel did not request a further hearing on the issue.  Indeed, the trial court did, in fact, specifically ask counsel if he had anything further, to which counsel responded in the negative.  Because there was nothing further to be offered, there was no reason for the trial court to have held a further hearing on the matter.[37]

The question is whether the trial court in the first instance, and the Appellate Division on appellate review, applied "standard rules of evidence" in excluding the proffered testimony.[38]

> [A]lthough Supreme Court precedent clearly establishes the general contours of a criminal defendant's right to present potentially exculpatory evidence, the Court has not articulated the specific set of circumstances under which a criminal defendant must be permitted to introduce evidence of potential third-party culpability.  Instead the Court has found that such evidence must be admitted when, under the "facts and circumstances" of the individual case, its exclusion deprived the defendant of a fair trial.  *Chambers,* 410 U.S. at 303, 93 S.Ct. 1038.[39]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any

---

[36] *Wade v. Mantello*, 333 F.3d 51, 57-58 (2d Cir. 2003).

[37] The New York Court of Appeals has held that when this situation is presented the trial court must allow the defense to make an offer of proof outside the presence of the jury.  *People v. Schulz*, 829 N.E.2d 1192, 1196-97 (N.Y. 2005).  The trial court in this case followed that procedure.

[38] *Wade*, 333 F.3d at 58.

[39] *Id.*

11

factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[40]  New York employs a similar rule.[41]  It is clear from the record in this case that the trial court did apply this standard rule of evidence to the proffered testimony, and concluded that its probative value was outweighed by the danger of confusion or misleading the jury.  This Court cannot say that the ruling was either arbitrary or capricious.  Mane was certainly not deprived of an opportunity to present his mistaken identity defense.  In his closing summation, Mane's counsel elaborated at considerable length on the inconsistencies in the descriptions of the assailant given by the various victims at the time of the incident.  Thus, the Appellate Division's conclusion "that the minimal probative value of such testimony was 'outweighed [by] the countervailing considerations of undue delay and juror confusion'" was not an objectively unreasonable application of clearly established federal law.[42]  It certainly cannot be said under the facts of this case that the exclusion of the proffered testimony deprived Mane of a fair trial.  Mane is not entitled to relief on his third ground.

## V.  CONCLUSION AND ORDER

Mane is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[40] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[41] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[42] *Wade*, 333 F.3d at 62; *see Holmes v. South Carolina*, 547 U.S. 319, 328-331 (2006) (acknowledging that the evidence that another person may have committed the crime may be excluded where it does not sufficiently connect the other person to the crime, *i.e.*, is remote or speculative, is widely accepted, explaining that the rule is intended to exclude evidence that has only a very weak logical connection to the central issue).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[43]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[44]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  July 30, 2010.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.

United States District Judge

---

[43] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[44] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.